LAW OFFICE OF PETER HORMEL, P.C.
P.O. Box 308
TUCSON, ARIZONA 85702
PHONE (520) 792-2090
FAX (520)792-2085

PETER HORMEL
ARIZONA STATE BAR NO. 015808
ATTORNEY FOR DEFENDANT

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS H. MORALES-ARMENTA,<br><br>Defendant. | CR15-00938-TUC-RCC (JR)<br><br>**RESPONSE TO GOVERNMENT'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER REQUIRING PROOF OF "PRIMARY PURPOSE" OF I-19 CHECKPOINT** |

COMES NOW, JESUS H. MORALES-ARMENTA, by and through undersigned counsel, and hereby requests that this Court deny the Government's Motion for Review of Magistrate Judge's Order Requiring Proof of "Primary Purpose" of I-19 Checkpoint for the reasons set forth in the following Memorandum of Points and Authorities.

DATED this 31st day of August, 2016.

By: s/ Peter Hormel
    Peter Hormel
    Attorney for Mr. Morales

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND

On April 20, 2015, a teal-colored Hyundai driven by Defendant, Jesus Morales-Armenta, approached the immigration checkpoint on Interstate 19, north of Nogales. After Mr. Morales stopped his vehicle at the checkpoint, a Border Patrol agent and his canine partner approached Mr. Morales' vehicle. The canine alerted and Mr. Morales was directed to park in the secondary inspection area. In the secondary inspection area, another Border Patrol agent opened the quarter panels and located packages that contained what was later determined to be cocaine. Based on the cocaine found in the vehicle, Mr. Morales was charged with conspiracy and possession with intent to distribute cocaine, as indicted. At no time in this case was a search warrant obtained.

On April 4, 2016, the defense requested that the Court suppress all the evidence in this case on the grounds that, among other things, Border Patrol transformed the limited checkpoint that the Supreme Court approved in *Martinez-Fuerte*[1] into an unconstitutional checkpoint. (See Def. Motion to Suppress). In its opposition to the Motion to Suppress, the government urged that the Border Patrol checkpoint on I-19, north of Nogales, was a proper immigration checkpoint, similar to the one the Supreme Court approved in *Martinez-Fuerte (See* Gov. Response to Motion to Suppress).

---

[1] 428 U.S. 543, 556-558 (1976)(holding that brief, suspicion-less seizures at "alien" checkpoints are constitutional when they are "limited to a few brief questions about immigration, the production of immigration documents, and a 'visual inspection of the vehicle...limited to what can be seen without a search.")

On July 12, 2016, the defense requested that the Court order the government to furnish the defendant with interdiction statistics from the I-19 checkpoint that show:

(1) how many canine alerts were made for the 12-month period bracketing the incident date in this case, i.e. the period six months prior to and six months following April 20, 2015;

(2) how many of these canine alerts resulted in the seizure of "concealed humans" and how many resulted in the seizure of drugs; and

(3) how many of these canine alters revealed no contraband at all.

(*See* Def. Motion to Compel Disclosure).

On July 26, 2016, the government filed its response to the defense's request. (Gov. Response to Defendant's Motion to Compel). The government argued that the defense failed to make a threshold showing of materiality by offering cases, which the government claimed, rejected arguments similar to the defense's argument in his Motion to Suppress. (*See* Gov. Response to Defendant's Request for Disclosure, pg. 5-6; *see also* Gov. Response to Defendant's Motion to Compel, pg. 2, lines 14-15). The government also argued that the information was immaterial by simply claiming that the primary purpose of the I-19 checkpoint is to combat illegal immigration.[2] (*See* Gov. Response to Defendant's Request for Disclosure, pg. 6; *see also* Gov. Response to Defendant's Motion to Compel, pg. 2, lines 14-15).

---

[2] The government also argued, and continues to argue, that it does not have cumulative statistics about canine alerts at the I-19 checkpoint, to which the defense has expressed its willingness to accept the raw data for the specified period. (*See* Transcript of Motion Hearing, pg. 7, lines 3-12).

On July 29, 2016, a hearing on the disclosure issue was held, at which both parties argued the materiality of the information requested. At the hearing, defense counsel directed the Court to the Supreme Court case that directly acknowledged the materiality of the information requested, *City of Indianapolis v. Edmond*.[3] (Transcript of Motion Hearing, pg. 28-29). The government, in response, urged that "the numbers by themselves, really, frankly, don't have meaning." (Transcript of Motion Hearing, pg. 36, lines. 17-18).

On August 11, 2016, the Court ruled that the defense made the threshold showing of materiality. (Order, pg.6, lines 2-3). In support of its ruling, the Court noted that

> "[i]n the present case, the Government will be tasked with proving that the "primary purpose" of the I-19 Checkpoint is to detect immigration violations. In attempting to make this showing, the Government may call witnesses (as it did in *Wilson*), and/or use historical data (as it did in *Soto-Camacho*). The defense in turn has the right to question the Government's proof and present its own proof in an attempt to show that the primary purpose of the I-19 Checkpoint is the discovery and interdiction of illegal narcotics and not illegal immigrants. Both parties should have access to all types of available proof."

*Id.* at 5. The Court, thus, ordered the government to provide "an affidavit from the Chief Counsel's Office indicating whether any of the requested information exists and if not, whether it can be obtained with relative ease." *Id.* at 6.

The government now brings this Motion for Review of Magistrate Judge's Order Requiring Proof of "Primary Purpose" of I-19 Checkpoint ("Motion for Review"), appealing the Court's finding of materiality and order for production. (*See* Gov. Motion

---

[3] 531 U.S. 32 (2000).

for Review, pg. 3, lines 19-20). For the following reasons, the Defendant respectfully requests that this Court deny the government's Motion for Review.

**LAW AND ARGUMENT**

### A. THE REQUESTED INFORMATION IS MATERIAL TO DETERMINE THE PRIMARY PURPOSE OF THE I-19 CHECKPOINT.

In its Motion for Review, the government claims that the requested information is immaterial because "operational statistics concerning drug apprehensions are not determinative of the "primary purpose" of the checkpoint. (*See* Gov. Motion for Review, pg. 7). However, the government, conveniently ignores that both, the Ninth Circuit and the Supreme Court relied on interdiction statistics to determine the constitutionality of the checkpoints at issue in *United States v. Soto-Camacho,* 58 F.3d 408 (9th Cir. 1995) and *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000).

In *Soto-Camacho*, the Ninth Circuit justified its holding that the checkpoint at issue maintained a primarily immigration-purpose by relying on interdiction statistics that established there were more than 15 times more apprehensions of illegal aliens than arrests for drug-related offenses. *Soto-Camacho,* 58 F.3d at 412. In particular, the court, noted, that "Border Patrol agents at the Jacumba Checkpoint made at least 322 separate illegal alien seizures and apprehended 1,544 illegal aliens. During the same period, there were 68 seizures of controlled substances discovered in vehicles and 87 persons were arrested as a result." *Id.* The court then concluded that "the district court's finding of propriety [was] not clearly erroneous in light of the statistics which show that illegal alien seizures are substantially greater than those related to drugs." *Id.* at 412.

Similarly, in *Edmond*, the Court quantified the number of stops, the number of arrests, whether the arrests were for drugs or whether they were for other unrelated offenses in order to determine that the checkpoint was a drug-detection checkpoint. *Edmond*, 531 U.S. at 35 (One thousand one hundred and sixty-one vehicles were stopped and 104 arrests were made. Fifty-five arrests were for drug-related crime, while 49 for offenses unrelated to drugs). In examining this data, the Court recognized the importance of interdiction statistics:

> "For this reason, we examine the available evidence to determine the primary purpose of the checkpoint program. While we recognize the challenges inherent in a purpose inquiry, courts routinely engage in this enterprise in many areas of constitutional jurisprudence as a means of sifting abusive governmental conduct from that which is lawful. As a result, a program driven by an impermissible purpose may be proscribed while a program impelled by licit purposes is permitted, even though the challenged conduct may be outwardly similar. While reasonableness under the Fourth Amendment is predominantly an objective inquiry, our special needs and administrative search cases demonstrate that purpose is often relevant when suspicionless intrusions pursuant to a general scheme are at issue.

*Id.* at 46-47.

Thus, as both *Soto-Camacho* and *Edmond* establish, the requested information, unlike the government suggests, is material to determining the primary purpose of the I-19 checkpoint. As such, the Court should deny the government's Motion for Review.

**B. THE GOVERNMENT MUST ESTABLISH THE VALIDITY OF THE I-19 CHECKPOINT.**

In its Motion for Review, the government urges that the information requested is immaterial because *Edmond* has "reaffirm[ed] the validity and Constitutionality of

- 6 -

immigration checkpoints like the I-19 checkpoint." (Gov. Motion for Review, pg. 6, lines 17-18). However, unlike the government claims, the Court in *Edmond* did not provide blanket approval for all border checkpoints. Rather, the *Edmond* Court reaffirmed approval for brief, *limited* suspicion-less stops at "alien" checkpoints that are "limited to a few brief questions about immigration, the production of immigration documents, and a 'visual inspection of the vehicle...limited to what can be seen without a search.'" *Edmond*, 531 U.S. at 47 (noting that the holding in *Edmond* does not alter the checkpoints approved of in *Martinez-Fuerte); Martinez-Fuerte,* 428 U.S. at 556.

It is the government's burden to show that the I-19 checkpoint, the stop of Mr. Morales' vehicle and the subsequent search thereof comport with constitutional jurisprudence.[4] To meet its burden, the government must establish that the primary purpose of the I-19 checkpoint is to detect immigration violations. *See Soto-Camacho*, 58 F.3d at 412 (the constitutionality of a checkpoint turns on its primary purpose"). The government cannot, without providing any factual support, simply claim that the I-19 checkpoint is the same as the one described in *Martinez-Fuerte*. Rather,

> "[i]n attempting to make this showing, the Government may call witnesses (as it did in *Wilson*), and/or use historical data (as it did in *Soto-Camacho*). The defense in turn has the right to question the Government's proof and present its own proof in an attempt to show that the primary purpose of the I-19 Checkpoint is the discovery and interdiction of illegal narcotics and not illegal immigrants. Both parties should have access to all types of available proof."

---

[4] The government must prove the existence of an exception to the Fourth Amendment warrant requirement by a preponderance of the evidence. *United States v. Jeffers*, 342 U.S. 48 (1951); *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984).

(Order, pg. 5-6)

Hence, the information requested is clearly material as it would help establish whether the administrative searches are legitimate or a massive Fourth Amendment violation. Therefore, the Court should deny the government's Motion for Review.

### C. THE NINTH CIRCUIT HAS NOT PREVIOUSLY REJECTED THE DEFENSE'S CLAIM.

In its Motion for Review, the government also claims that the information is immaterial as the Ninth Circuit has already rejected arguments similar to the defense's claim in the Motion to Suppress. (*See* Gov. Motion for Review, pg. 6). In support of its argument, the government urges that the line of authority it cites[5] repudiates the defense's claim. *Id.* at 7.

However, as the defense previously argued in its Reply in Support of Defendant's Motion to Suppress, these cases, which significantly predate the primary Supreme Court case cited by the defense in its motion[6], address referring a car to secondary inspection for drug-related offenses.[7] These arguments differ from the limited argument raised by the

---

[5] The government cites *United States v. Barnett*, 935 F.2d 178 (9th Cir. 1991); *United States v. Wilson*, 7 F.3d 828 (9th Cir. 1993) and *United States v. Soyland*, 3 F.3d 1312 (9th Cir. 1993). *Id.* at 6.

[6] The defense cited *of Indianapolis v. Edmond,* 531 U.S. 32 (2000).

[7] In *Barnett,* the defendant argued that the agents needed articulable suspicion or probable cause to refer the defendants to secondary inspection because the referral was for the purposes of investigating drug-related offense. *Barnett*, 935 F.2d at 181. In *Wilson*, the defendant argued that no immigration purpose justified referring the car to the secondary inspection area. *Wilson*, 7 F.3d at 833. In *Soyland*, the defendant argued that "the the referral to secondary inspection was improper because it was made without 'reasonable suspicion.'" *Soyland*, 3 F.3d at 1314.

defense—Border Patrol has exceeded the authority granted to it in *Martinez-Fuerte*. *See Barnett*, 935 F. 2d 181 (the defendants "contend that their referral by the first agent to secondary inspection was illegal," they "do not contend that this initial stop exceeded, in intrusiveness, the stop and initial inquiry in *Martinez-Fuerte*"); *see also Soyland,* 3 F.3d at 1314 (The defendant argues that the referral to secondary inspection requires reasonable suspicion, he does not argue that "Border Patrol in establishing the checkpoint, intended to search for illegal drugs under the pretext of searching for undocumented aliens"). Thus, in all three cases, the court did not address the issue raised in the defense's claim. *See e.g. Soyland,* 3 F.3d at 1314 ("We will not contribute to the chaos created by deciding questions not first presented at trial. We have no occasion to address the issue of whether checkpoint officers routinely overstep their authority by conducting pretextual narcotics searches").

Therefore, unlike the government again asserts, the Ninth Circuit has not repeatedly rejected the defense's claim. Rather, like the court recognized in *Barnett* and *Soyland*, the Ninth Circuit, in the above cases, decided a different issue than that raised by the defense. Hence, the issue at hand is still very much a question in this case and the information requested plays a vital role in determining the constitutionality of the I-19 checkpoint. Therefore, the Court should deny the government's Motion for Review.

. . .

**CONCLUSION**

For the foregoing reasons, Mr. Morales respectfully requests that this Court deny the Government's Motion for Review of Magistrate Judge's Order Requiring Proof of "Primary Purpose" of I-19 Checkpoint. It is further requested that the Court require the government to comply with the Court's previous Order.

DATED this 31st day of August, 2016.

By: s/ Peter Hormel__
Peter Hormel
Attorney for Mr. Morales

Electronic copy to:

David Flannigan
AUSA

Michael Jette
AUSA